Rel: June 21, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

_____

### SC-2023-0137

_____

**Deborah M. Kelley, as personal representative of the Estate of Ann Marie Moore, deceased**

**v.**

**Jackson Medical Center, LLC, and Ikram Hussain, M.D.**

**Appeal from Clarke Circuit Court
(CV-20-900061)**

BRYAN, Justice.

AFFIRMED. NO OPINION.

See Rule 53(a)(1) and (a)(2)(E), Ala. R. App. P.

Parker, C.J., and Shaw, Wise, Mendheim, Stewart, Mitchell, and Cook, JJ., concur.

Sellers, J., concurs specially, with opinion.

SELLERS, Justice (concurring specially).

Deborah M. Kelley, as the personal representative of the estate of her deceased mother, Ann Marie Moore, appeals from a summary judgment entered by the Clarke Circuit Court in favor Jackson Medical Center, LLC ("Jackson Medical"), and Dr. Ikram Hussain, a physician employed by Jackson Medical, in this medical-malpractice, wrongful-death action. This Court affirms the summary judgment in favor of Jackson Medical and Dr. Hussain, without an opinion. I write specially to point out what an expert in a medical-malpractice, wrongful-death action should include in his or her testimony. Here, Kelley's expert, Dr. Umer Ahmad, a board-certified physician in internal medicine, opined in his affidavit that Dr. Hussain's breach of the applicable standard of care probably caused Moore's death. The relevant facts indicate that, on June 23, 2018, Moore, who was 74 years old at the time, was admitted to the hospital operated by Jackson Medical after suffering a pelvic fracture in a fall. While at the hospital, Moore was administered narcotic pain medication for her pelvic fracture; she was also treated for various other medical conditions, including hyponatremia (a low level of sodium) and chronic obstructive pulmonary disease ("COPD") (a lung

3

disease). Dr. Hussain, among others, treated Moore during her admission to the hospital. On June 30, 2018, Moore was transferred to Mobile Infirmary Medical Center to receive a higher level of care due to the levels of carbon dioxide in her blood. On July 11, 2018, Moore was released to Jackson County Nursing Home, where she died on February 3, 2019. Moore's death certificate listed her cause of death as "Chronic Obstructive Pulmonary Disease." In her complaint, Kelley alleged, in relevant part, that Jackson Medical and Dr. Hussain had negligently and wantonly breached the standard of care owed to Moore by (1) administering or overprescribing narcotic pain medication; (2) failing to monitor her respiratory condition, leading to a decline in oxygen levels, or complete oxygen deprivation, to the brain; and (3) failing to treat her hyponatremia. Kelley alleged that, as a proximate cause of the breach of the standard of care, Moore had suffered "respiratory distress or failure, a brain injury, and other injuries" and that she had died as a result of those injuries. Kelley's expert, Dr. Ahmad, submitted an affidavit, testifying, in relevant part:

> "a. [Dr. Hussain] breached the standard of care by not adequately addressing Mrs. Moore's hyponatremia.

"b. The standard of care was breached by inadequately delaying treatment and response to Mrs. Moore's unresponsive condition and signs of respiratory distress or failure, including, but not limited [to,] monitoring arterial blood gases.

"c. The standard of care was breached by failing to monitor and delaying treatment for Mrs. Moore's response to narcotic pain medication.

"6. These breaches of the standard of care, more likely than not, caused her to suffer an anoxic brain injury and worsened her condition, significantly raising her mortality risk, and ultimately contributed to her decline. <u>In my opinion, prompt medical treatment, more likely than not, would have prevented her anoxic brain injury and her ultimate decline.</u>"

(Emphasis added.)

Dr. Ahmad's affidavit testimony not only failed to define the applicable standard of care, but also failed to establish a proximate causal connection between Dr. Hussain's treatment of Moore between June 23-30, 2018, and her death almost eight months later in February 2019. In essence, Dr. Ahmad opined that "prompt medical treatment, more likely than not, would have prevented [Moore's] anoxic brain injury and her ultimate decline." However, the necessary evidentiary foundation for such an opinion does not exist. For example, although Kelley alleged that Moore had suffered a "brain injury" as a

5

result of either declining oxygen levels or a complete deprivation of oxygen, Dr. Ahmad's affidavit provides no details or specific facts regarding when or how an anoxic brain injury occurred. In fact, as Jackson Medical and Dr. Hussain assert in their brief, the discharge diagnoses from the hospital do not include anoxic brain injury, Moore was never diagnosed with anoxic brain injury during her admission to Mobile Infirmary, and the discharge diagnoses from Mobile Infirmary do not include anoxic brain injury. Jackson Medical and Dr. Hussain's brief at 21. They also state that, over the course of her stay at Jackson County Nursing Home, Moore experienced various medical issues, including "episodes of hyponatremia with altered mental status, COPD exacerbation[,] and multiple falls with injuries resulting in contusions and lacerations to her head, a large hematoma to the right occipital region of her scalp[,] and lower extremity injuries." Id. Dr. Ahmad's affidavit provides no reference to Moore's cause of death, which is listed on the death certificate as COPD, a chronic medical condition that Moore suffered before, during, and after her discharge from the hospital. Jennifer Dowling, a registered nurse at the hospital, stated in her affidavit that Moore was admitted to the hospital for pain

6

management as a result of her pelvic injury, as well as for treatment for her existing underlying medical conditions, including, among other things, COPD. In a medical-malpractice, wrongful-death action, a similarly situated health-care provider must provide an expert opinion to show a direct causal connection between the deficiencies in medical care and the death of the patient. Dr. Ahmad's affidavit contains no testimony of what actually caused Moore's death or how her death could have been prevented by Dr. Hussain. As indicated, the death certificate states that Moore died of COPD, a lung disease, but Dr. Ahmad's testimony discusses anoxic brain injury. How an anoxic brain injury led to death from a lung disease such as COPD is a question of material fact, the answer to which is missing from Dr. Ahmad's testimony. Based on the foregoing, I view Dr. Ahmad's opinion, as stated in his affidavit, as merely conclusory. See Bradley v. Miller, 878 So. 2d 262, 266 (Ala. 2003) ("An expert witness's opinion that is conclusory, speculative, and without a proper evidentiary foundation cannot create a genuine issue of material fact."). Accordingly, the trial court properly entered a summary judgment in favor of both Jackson Medical and Dr. Hussain.